# Exhibit 25

# Expert Report of Dr. Kyle Stiegert

# (REDACTED)

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

| | |
|---|---|
| **CHARLES MORRIS, MORVATT ENTERPRISES, LLC, WILLIAM RICKARD, SONDRA RICKARD, RICKARD FARMS, LLC, ICU CHICKENS, LLC, WISHBONE POULTRY, DENNIS CLAPP, JOHN PINKSTON, LOI HONG, H & L FARMS, LLC, DOUG BROWN, TIM VINCENT, TLC POULTRY, LLC, POULTRY SPECIALTY SERVICE, LLC, KEITH CRABTREE, CHRISTOPHER BURCH, MIKE MURPHY, MURPHY FARMS, LLC, and CALVIN LEISURE** | **Civil Action No. 4:15-cv-77-m** |
| **Plaintiffs,** | **DECLARATION OF KYLE STIEGERT IN SUPPORT OF PLAINTIFFS' RULE 26(a)(2) EXPERT DISCLOSURES** |
| **v.** | |
| **TYSON CHICKEN, INC., ET AL.** | |
| **Defendants.** | |

grower services. Absent Tyson's monopsony power at the Robards Complex, Tyson would not likely have been able to maintain its tournament structure without compensating its growers with higher base pay.

**vi)** Economic theory strongly establishes that the exercise of monopsony power, such as Tyson's exercise of monopsony power at the Robards Complex, is likely to cause harm to competition. Tyson's exercise of monopsony power artificially lowers pay for growers. This has the effect of depressing the supply of chicken by either completely driving growers from the market or preventing growers from expanding output. Not only does this harm the upstream market for growing services but it can also result in reduced output and higher prices of chicken in the downstream market.

19. I have also calculated damages to Plaintiffs based on (a) the suppression of grower pay per pound grown; (b) the reduction in pounds grown based on flocks being spaced out longer than projected (i.e., higher "days-out"); and (c) Tyson's policies regarding condemnation. My conclusions regarding damages for each of these three categories are as follows:

[redacted]

services at the Robards Complex market. As I have mentioned previously, MacDonald and Key have estimated that grower pay in a monopsony market is lower by 7% than in a market with four or more integrators. I have therefore used this estimate of MacDonald and Key to adjust the grower pay upwards in 2010, the first year in my analysis. I explain the adjustment I have made in a subsequent paragraph.

120. For the purpose of my analysis, in addition to the information on grower pay that I obtained from the Robards Complex's Grower Recap by Grower sheets, I use Tyson's chicken segment financial information from Agri Stats data that was produced by Tyson in this litigation. The data from Agri Stats covers the period from 2010 through July of 2018. From Tyson's chicken segment monthly profitability statements, I have used data reported on three variables: sales revenue, good live pounds, and cost of goods sold. From these three variables, I first calculated the sales revenue per pound and cost of goods per pound. I then calculated Tyson's gross margin per pound by subtracting the cost of goods sold per pound from the sales revenue per pound. I then added the Plaintiffs' weighted average grower pay per pound to Tyson's gross margin per pound to obtain the gross margin per pound before payment is made to the growers. Table 11 below presents the information I obtained from Agri Stats and the calculations I describe above.

**Table 11: Tyson's Gross Margin per Pound**[157]

[redacted]

121. I estimated damages relating to the suppression of grower pay as the difference between the 'but-for' grower pay and the actual grower pay received by the Plaintiffs. I estimated the 'but-for' grower pay received by the Plaintiffs using the ratio of Plaintiffs' weighted average grower pay in 2010 with Tyson's gross margin excluding grower pay in the same year. When I calculated the ratio, I adjusted the grower pay in 2010 upward by 7% to reflect the effect of a monopsonist integrator underpaying growers by 7% vis-à-vis markets with 4 or more integrators. I then applied this ratio to Tyson's gross margin excluding grower pay to estimate the 'but-for' grower pay received by the Plaintiffs. As I explained above, I base my analysis on the conclusion that Tyson uses its monopsony power at the Robards Complex to reduce the portion of the gross margin it earns (after

[redacted]

paying for all other costs related to producing and processing chicken meat) that it shares with the growers in the form of payment for their services.

[redacted]

[158] C. Robert Taylor and David A. Domina (2010) "Restoring Economic Health to Contract Poultry Production" p. 4.