# Exhibit 27

# Second Deposition of Dr. Kyle Stiegert

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

-----------------------------------------------------

CHARLES MORRIS, MORVATT ENTERPRISES, LLC, WILLIAM RICKARD, SONDRA RICKARD, RICKARD FARMS, LLC, ICU CHICKENS, LLC, WISHBONE POULTRY, DENNIS CLAPP, JOHN PINKSTON, LOI HONG, H & L FARMS, LLC, DOUG BROWN, TIM VINCENT, TLC POULTRY, LLC, POULTRY SPECIALTY SERVICE, LLC, KEITH CRABTREE, CHRISTOPHER BURCH, MIKE MURPHY, MURPHY FARMS, LLC, and CALVIN LEISURE,

Plaintiffs,

-vs- Case No. 4:15-cv-00077

Judge: Honorable Joseph H. McKinley

TYSON CHICKEN, INC., et al.

Defendants.

-----------------------------------------------------

Video Deposition of DR. KYLE STIEGERT
Thursday, January 16th, 2020
9:03 a.m.
at
COYNE, SCHULTZ, BECKER & BAUER, S.C.
150 East Gilman Street, Suite 1000
Madison, Wisconsin

Reported by: Wendy L. Hanneman, RPR



Video Deposition of DR. KYLE STIEGERT, a witness in the above-entitled action, taken at the instance of the Defendants, pursuant to the Federal Rules of Civil Procedure, pursuant to notice, before WENDY L. HANNEMAN, Registered Professional Reporter and Notary Public in and for the State of Wisconsin, at COYNE, SCHULTZ, BECKER & BAUER, S.C., 150 East Gilman Street, Suite 1000, Madison, Wisconsin, on the 16th day of January, 2020, commencing at 9:03 a.m. and concluding at 1:03 p.m.

A P P E A R A N C E S:

WHITFIELD, BRYSON & MASON, LLP, by
Mr. John Whitfield
19 North Main Street
Madisonville, Kentucky 42431
Appeared on behalf of the Plaintiffs.

SHOOK, HARDY & BACON, LLP, by
Mark C. Tatum
2555 Grand Boulevard
Kansas City, Missouri 64108
Appeared on behalf of the Defendants.

TYSON FOODS, by
Mr. Eli J. Glasser
2200 West Don Tyson Parkway
Springdale, Arkansas 72762-6901
Appeared telephonically as in-house counsel for Tyson Chicken, Inc.

ALSO PRESENT: Dennis Winter - Videographer



I N D E X


| EXAMINATION | PAGE |
|---|---|
| MR. TATUM | 333 |
| MR. WHITFIELD | 490 |


E X H I B I T S


| NO. | DESCRIPTION | PAGE IDENTIFIED |
|---|---|---|
| Exh. 9 | Curriculum vitae | 334 |
| Exh. 10 | Elam/Thurman reports | 334 |
| Exh. 11 | Original report | 334 |
| Exh. 12 | Second report | 334 |
| Exh. 13 | Supplemental declaration | 342 |


(Exhibits were retained by the court reporter. Originals attached to original transcript and copies to copy transcripts.)



TRANSCRIPT OF PROCEEDINGS

THE VIDEOGRAPHER: Good morning. We're on the record. This is Volume 2 in the videotaped deposition of Kyle Stiegert, M.D., in the matter of Charles Morris, et al. versus Tyson Chicken, et al., Case Number 415CV00077. This deposition is taking place at Coyne, Shultz, Becker & Bauer, 150 East Gilman Street, Madison, Wisconsin, on January 16th, 2020, at 9:03 a.m.

My name is Dennis Winter, I'm the videographer with U.S. Legal Support located at 411 East Wisconsin Avenue, Milwaukee, Wisconsin. Video and audio recording will be taking place unless all counsel have agreed to go off the record. Will counsel please state their appearances for the record and who they represent, starting with the Plaintiff, and then the court reporter will swear in the witness.

MR. WHITFIELD: I'm John Whitfield, I represent the Plaintiffs in this case.

MR. TATUM: And Mark Tatum on behalf of the Defendants. And we have Eli Glasser from Tyson Foods on the phone and present as well.

**didn't do the analysis, right?**
A I don't think that data is available.
**Q Well --**
A I don't think that's available.
**Q Okay.**
A So I don't know how you could do it.
**Q Well, you know Dr. Elam has an opinion on that, right?**
A I don't think he has the exact mix of the hens in each delivery.
**Q You don't know, because you didn't do the analysis? And your opinion is is because you didn't feel like you had the data available; is that fair?**
A That's my opinion.
**Q Am I --**
A I'm just trying to remember, was that data -- was there any kind of micro data on the share of hens delivered and what kinds of hens they were. And I don't recall as I sit here if that was even something that was available.
**Q You don't know if over time the days that farmers grew their chickens, what we call grow-out time --**
A Yeah, we have the days, yeah.
**Q -- was consistent?**
A Well, we know -- we know that it couldn't be



consistent.
**Q You didn't analyze whether over time, on average, all the growers were growing chicks relatively the same amount of time?**
A Well, I -- I did analyze that through the depositions and the way -- the way that --
**Q But you didn't analyze the data?**
A -- the way the industry operates.
**Q But you didn't analyze the data here over time to determine whether or not on average grow-out time was consistent, correct?**
A I didn't see a need to do that for the context of what I was working on.
**Q You also didn't analyze in this case whether or not under the contracts, the plaintiffs had been paid all they were entitled to be paid, correct?**
**You determined that you felt like that the pay they were entitled to be paid under the contract was too low, I get that. But as far as what the contract said, you did no analysis whatsoever to determine if they got paid according to those terms?**
A I -- I think we talked about this in my last deposition. I'm pretty sure I answered that question.



**Q And the answer is "no", correct? I'm making sure you didn't do it in your supplement, too.**
MR. WHITFIELD: Object. "No" to what, Counsel?
BY MR. TATUM:
**Q You didn't do any analysis --**
A The answer is we never -- you know, nothing that -- nothing that I did, or nothing that Nathan uncovered in -- in the work caused us to believe that they were paid somehow different in -- there wasn't an accounting challenge here. That wasn't the basis of this case.
**Q Right. And, similarly, in your supplemental report, there's no, as you term it, accounting challenge to --**
A No, there's no -- there's nothing of that nature that --
**Q Right.**
A -- in the process of doing this work, nothing was uncovered in that regard, so.
**Q In fact, you didn't find anything in either your first report or your second report that Tyson paid inconsistent with the terms of its contracts to these plaintiffs, correct?**
A I'm not challenging that. I don't -- as I sit here



today, I don't know if there was ever a situation that we observed, but that wasn't the focus of this -- of this work.
**Q Right. The focus of your work had, in fact, nothing to do with determining whether or not they complied with the terms of the contract, correct?**
A It wasn't my assignment, no.
**Q Likewise, the focus of your assignment was not to determine whether or not any plaintiff versus other growers had been treated differently, it was to determine whether or not, as a general matter, pay was suppressed in this case, correct --**
A That is --
**Q -- through monopsony power?**
A That is -- that is spot-on correct.
**Q Right. So you have no opinion in this case as to whether or not any plaintiff was treated fairly or differently than anyone else at the Robards complex?**
A I have -- as I sit here today, I have no opinion, although in reading the depositions from the plaintiffs, there was a -- there is a sense that some people didn't feel that way. I'd have to go back and review everything.
**Q Now, you've said that in relation to Dr. Elam --**