# Exhibit 34

# Deposition of Morvatt Enterprises, LLC

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CHARLES MORRIS, MORVATT ENTERPRISES, LLC, WILLIAM RICKARD, SONDRA RICKARD, RICKARD FARMS, LLC, ICU CHICKENS, LLC, WISHBONE POULTRY, DENNIS CLAPP, JOHN PINKSTON, LOI HONG, H & L FARMS, LLC, DOUG BROWN, TIM VINCENT, TLC POULTRY, LLC, POULTRY SPECIALTY SERVICE, LLC, KEITH CRABTREE, CHRISTOPHER BURCH, MIKE MURPHY, MURPHY FARMS, LLC, and CALVIN LEISURE,

Plaintiffs,

v. NO. 4:15-cv-00077

TYSON CHICKEN, INC., et al.,

Defendants.

______________________________

30(b)(6) DEPOSITION OF MORVATT ENTERPRISES, LLC/TERESA FRANCES
SEPTEMBER 7, 2018

\- - - -

Deposition of MORVATT ENTERPRISES/TERESA FRANCES held at 19 North Main Street, Madisonville, Kentucky, commencing at 10:20 a.m., on the above date, before Gina Hawkins Registered Professional Reporter and Certified Realtime Reporter.

Page 2

I N D E X


| WITNESS | PAGE |
|---|---|
| TERESA FRANCES | |
| Examination by Mr. Tatum | 4 |
| Examination by Mr. Whitfield | 152 |
| Further Examination by Mr. Tatum | 159 |


EXHIBITS


| Number | | |
|---|---|---|
| 1 | Notice of Video Deposition Duces Tecum of Plaintiff Morvatt Enterprises, LLC Pursuant to Fed.R.Civ.P.30(b)(6) | 40 |
| 2 | Tax Asset Detail 1/01/18 - 12/31/18 | 85 |
| 3 | Composite of Profit & Loss Statements for 2010 through 2017 | 86 |


Page 3

A P P E A R A N C E S


John C. Whitfield, Esquire
WHITFIELD, BRYSON & MASON, LLP
(Appearing on behalf of the Plaintiffs)
19 North Main Street
Madisonville, Kentucky 42431
270.821.0656
john@wbmllp.com

Mark C. Tatum, Esquire
SHOOK, HARDY & BACON, LLP
(Appearing on behalf of the Defendants)
2555 Grand Blvd.
Kansas City, Missouri 64108
816.474.6550
mtatum@shb.com


Page 4

TERESA FRANCES

was called as a witness and, after having been first duly sworn, was deposed and testified as follows:

EXAMINATION

BY MR. TATUM:

Q Would you state your full name?

A Teresa Frances.

Q Teresa, how do you spell Teresa and Frances?

A T-e-r-e-s-a F-r-a-n-c-e-s.

Q And Teresa, where do you work?

A I have my own business, Frances Bookkeeping Services.

Q Where is that based out of?

A Lexington, South Carolina.

Q How long have you had that business?

A A little over two years.

Q Do you have like any degrees or anything like that?

A I have a bachelor's degree in accounting.

Q Any other education?

A No, sir.

Q Where did you get your bachelor's degree?

A Saint Leo University.

Q Where is Saint Leo University?

A In Florida. It's online programs.

Page 41

A Yes, sir.
Q Which topics?
A The gross revenue, number one, number two, number three, limited on number four and limited on number five.
Q You're not here to testify as to topic six or seven?
A No, sir.
Q What is limited about your ability to testify on topics four and five?
A Just depending on what you're needing to know.
Q Based on --
A Because I was not on property when he did his startup costs.
Q What does being on property have to do with knowing what his startup costs are?
A I mean, like I said, it just depends on the questions you're asking whether I know answers or not.
Q What is it about reading the topic right now that tells you you're not prepared?
A Because you're wanting an itemization of all startup costs.
Q You're not prepared for that? In other words, you couldn't tell me this is a list of the startup costs associated with Morvatt Enterprises; is that fair?
A I mean, no, I probably couldn't tell you -- I

Page 42

could tell you this is a list, yes, but off the top of my head, no, I could not tell you exactly what they were.
Q And then what's limited about your ability on topic five, as it's written there?
A Because I do not know all the payoff dates and the amounts of standing and current status.
Q So you don't know current status of financing terms for any refinance issues?
A I mean, it goes to depending on the question. I'm going to --
Q You don't know payoff dates?
A No, sir, I do not know the payoff dates without pulling the contracts.
Q When you say "current status," you mean the amount of debt?
A The current balance.
Q Anything else off those topics you feel like you don't know?
A Not to my knowledge.
Q What did you do to prepare for this deposition today?
A I prepared the documentation that was requested.
Q Did you review anything?
A Yes, sir.
Q What did you review?

Page 43

A What was provided.
Q What was provided?
A Yes, sir.
Q Hmm?
A Oh, the Profit and Loss Statements and the asset listing.
Q Who provided you the profit and loss and asset listing?
A I provided the profit and loss, and the CPA provided the asset listing.
Q Who's the CPA that provided that?
A Jason.
Q Jason?
A I'm sorry. I can look up his last name, but I don't know it off the top of my head.
Q You can look it up.
A I don't have his last name in here. He's from Clemm Dassel, CPA.
Q How do you spell Clemm Dassel?
A C-l-e-m-m D-a-s-s-e-l.
Q What's its address?
A I do not know the address.
Q Are you looking at an e-mail that has a signature block or something?
A I was looking at my phone contact.

Page 44

Q Do you know what state it's in?
A Indiana.
Q So he provided you an asset listing?
A Yes, sir.
Q Did he e-mail it to you?
A E-mail.
Q Do you know, was it something he created for purposes to help you, or was it a document that --
A It's a document used to prepare tax returns.
Q So it's a document he creates?
A It was created through the years prepared by the CPA based on the documentation from QuickBooks and Mr. Morris.
Q Not a document you created?
A No, sir.
Q Have you done anything to verify it's accurate?
A Reviewed it to make sure the assets were correct.
Q How do you know if the assets are correct?
A By looking at the expenses that we paid and what's its done over the years.
Q So you don't know if the assets are physically there. You're just saying, based on the records Charles has given me, I paid a bill for it?
MR. WHITFIELD: Object to form.
A No. I mean, based on the debt, because most of

BY MR. TATUM:
Q -- since 2008, the best you can do is Exhibit 2; right?
MR. WHITFIELD: Go ahead and answer.
A Correct.
MR. TATUM: What's your second document there? We'll mark it as Exhibit 3.
(Exhibit 2 was marked for identification.)
MR. WHITFIELD: Also for purposes of the record, which might streamline some of this, there was discussion early on about whether or not Morvatt Enterprises and Mr. Morris is going to initiate individual claims, individual damage calculation of claims, and --
THE WITNESS: You can pull those -- those as well.
MR. WHITFIELD: And for purposes of the record, those individuals claims of which the Court made reference to at the last hearing will not be utilized by Mr. Morris and Morvatt.
The claims and damage calculations that I'm using generically calling these the 30,000-foot calculations will be initiated, and so for purposes of the record, we do not waive our right to discuss things that you're talking about here, but we do not intend to utilize



those things in a calculation of individualized damage claims by Morvatt or Mr. Morris. All right.
A These are the individual profit and loss --
MR. TATUM: It just helps her if we kind of process it in order.
BY MR. TATUM:
Q So I'm going to mark as Exhibit No. 3 a one-page document.
A Yes, sir.
Q One-page document labeled "Morvatt Enterprises, LLC Profit and Loss January through December of 2010."
Are there a series of these, or is this the only one?
A No, sir. That's what all of these documents are, is the Profit and Loss Statements per year.
Q So maybe it would be -- maybe what I ought to do is, I'm going to mark these -- is this is basically an annualized P&L --
A Yes.
Q -- for all of the years?
MR. TATUM: So I'm going to mark the whole thing as one.
(Exhibit 3 was marked for identification.)
BY MR. TATUM:
Q Is it fair to say these are Morvatt Enterprises



P&L sheets from 2010 through 2017?
A Yes, sir, per chicken poultry business.
Q So we don't have one for current year '18 because it hasn't been created yet?
A Absolutely.
Q And we don't have one for 2008 or 2009?
A No, sir. Those were not requested.
Q And I am curious, how do you have a tax asset detail through 12/31/18 in Exhibit 2 sitting here in September of 2018?
A Because that's just the date the CPA printed it, but it only runs through December of 2017.
Q Okay. So let me make sure I understand it.
It says, "Tax Asset Detail 1/1/18 to 12/31/18." The print date on it is 5/8/2018.
What does it actually reflect from a time/year standpoint, as you understand it?
A The assets that Morvatt currently holds between the date of acquisition until December 31, 2017.
Q For example, "FYE" means fiscal year ending 12/31/2018?
A Yes, sir. It's just, he had advanced his software when he printed that document.
Q So Exhibit Number 2 reflects Tax Asset Detail up to December 31, 2017?



A Yes, sir.
Q From the beginning of Morvatt Enterprises?
A Yes, sir, what he currently owns.
Q Right. So Exhibit No. 3, these are P&L statements. Do you create these?
A Yes, sir.
Q How do you create these?
A Based on the cash receipt and the cash disbursements of Morvatt.
Q And these are cash -- when you say "cash receipts," that means receipts, for example, from Tyson?
A Yes, sir.
Q Are there any other cash receipts that go onto the P&L?
A Not the P&Ls, not for the -- there are others, but they're not posted. This is only to do with the chicken business.
Q So you say there are others, but not posted. Help me understand what you mean.
A They're posted, but not printed on these P&Ls that I'm providing you today because they have nothing to do with the poultry industry.
Q They have to do with his other businesses?
A His other -- yes. Not businesses, but ventures, yes, sir.

Page 121

know of off the top of my head.
Q Where would I go to see that itemization?
A That's a report out of QuickBooks. I'm sorry. I did not bring that because my printer did not work last night.
Q QuickBooks would break down the 89,000 on Exhibit Number 2 and say this is what was spent and what it was spent on?
A Yes.
Q So if I could look at it and know the itemization?
A Yes, there's a QuickBooks report for that.
Q Similarly, for all these entries, there's a QuickBook report for Exhibit Number 2 that will show me the detail behind the gross number?
A Yes, sir.
Q In tax cost column?
A Yes, sir.
Q Do you want to take a break?
A Yeah, please.
Q No problem.
(Recess was taken.)
BY MR. TATUM:
Q All right. To sum up some of the things we've talked about today, and looking back at Exhibit Number 1,

Page 122

which is your deposition notice, Topic Number 1, an itemization of the gross revenue you have earned through the poultry business on an annual basis from 2010 to the present.
A Yes, sir.
Q So the only information you have to provide me in relation to gross revenue is that reflected on the Exhibit 3 packet; correct?
A Yes, sir.
Q And you testified that otherwise you don't have any information?
A No, sir.
Q Topic 2, itemization of the gross and net profits you have earned through the poultry business on an annual basis.
The only information you have to provide me is what's reflected in Exhibit 3 in relation to that; correct?
A Yes, sir.
Q Number 3, itemization of all expenses of any kind, including type of expense and amounts you have incurred on annual basis in relation to poultry operations from 2010 to the present, the only information you have to provide me in relation to that is also reflected in Exhibit 3 and the underlying documentation; right?
A Yes, sir.

Page 123

Q And Number 4, you testified you're not here to talk about the -- well, you said maybe you were.
Itemization of all startup costs you incurred to enter the poultry business.
We talked about that. The only information you have about that is what's reflected in Exhibit 2 under the heading "Startup Costs," correct?
A Yes, sir.
Q And then Number 5, itemization of any refinance costs.
Again, the only information you have is what's reflected in the "Refinance" heading of Exhibit Number 2 --
A Yes, sir.
Q -- as you've testified to today; right?
A Yes, sir.
MR. WHITFIELD: You said Exhibit 2 or Exhibit 3?
MR. TATUM: Exhibit 2.
MR. WHITFIELD: Okay.
BY MR. TATUM:
Q You said you were not here to testify about Exhibit 6, an itemization of upgrades that were made in relation to the poultry business to your farms, including amounts paid for each upgrade, dates of upgrades, terms.
You said you weren't here it testify about that?
A No, sir.

Page 124

Q And then 7, an itemization of damages you allege to have occurred as a result of this lawsuit.
You're not here to testify about that?
A No, sir.
Q You don't have any opinions about that one way or the other; right?
A No, sir.
Q I was asking you a little bit about your background.
Do you belong to any accountant organizations or anything like that?
A No, sir.
Q I don't want to be too limited when I say "accountant," but just sort of bookkeeping organizations, accountant organizations, financial services organizations?
A No, sir.
Q Do you belong to any professional groups of any kind?
A No, sir.
Q Are you licensed in any way?
A No, sir.
Q Are you subject to any sort of -- for example, as a lawyer, subject to Code of Professional Responsibility that applies to lawyers.
Do you have a Code of Ethics and Professional