**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**OWENSBORO DIVISION**

| | | |
|---|---|---|
| CHARLES MORRIS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 4:15-cv-00077 |
| v. | ) | |
| | ) | Judge: Joseph H. McKinley, Jr. |
| TYSON CHICKEN, INC., et al. | ) | |
| | ) | |
| Defendant. | ) | |

---

**DEFENDANT'S REPLY TO PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT TYSON CHICKEN, INC.'S MOTION FOR SUMMARY JUDGMENT**

---

**INTRODUCTION**

Tyson's Motion set forth the case law and undisputed facts establishing it is entitled to summary judgment. To survive summary judgment, Plaintiffs needed to demonstrate Tyson was wrong on the law or identify material facts in dispute. Plaintiffs failed to do either.

Plaintiffs' first legal argument ignores binding precedent and asks the Court to create new law that not all §192 PSA claims require an anticompetitive effect. The binding case law both sides cite demonstrate unequivocally this is false. Plaintiffs' second legal argument is that Tyson has incorrectly set forth what is required under the law to establish an anticompetitive effect and propose their own less-stringent version of what is required. This very argument has been specifically rejected by every court to consider it.

Plaintiffs next argue there are disputed material facts as to whether Tyson engaged in "unfair" and "deceptive" practices. In support of its motion, Tyson set forth uncontroverted facts supporting judgment on these claims. As Tyson demonstrates below, Plaintiffs admitted virtually every single fact, and the "facts" which Plaintiffs now desperately cling to in their Opposition are neither material nor in any way preclude entry of judgment.

Plaintiffs' contract claims (breach of contract and breach of the duty of good faith and fair dealing) are simply their PSA claim with a new label, and they fail for the same reasons. Finally, Plaintiffs' claims fail for an additional, independent reason: with the shift of their theory of recovery in their Opposition, Plaintiffs' alleged damages bear no relationship to the allegations on which Plaintiffs now seek to submit their case. Thus, Plaintiffs have presented no damages on the theory of recovery they now propose under any cause of action.

For all these reasons, summary judgment is appropriate.

**ARGUMENT**

**I. Plaintiffs' Claim that "Deceptive Practices" Under the PSA Do Not Require a Showing of Anticompetitive Effect Ignores Binding Law.**

Plaintiffs ask the Court to rewrite §192(a) because they cannot show an anticompetitive effect on the market. Plaintiffs argue "deceptive practices" is a "subset of the PSA's causes of action" within §192(a) that does not require an anticompetitive effect. Mem. of L. in Opp. to Def's Mot. for Sum. J. ("Opposition"), ECF No. 222, 14. Plaintiffs are unable to point to a single case where any court has held or otherwise indicated that §192(a) claims based on "deceptive practices" do not require an anticompetitive effect.[1] In short, Plaintiffs ask the Court to create new law in this forum, which they failed to obtain at the regulatory level. .

In arguing "deceptive practices" are a "distinct PSA claim that does not require evidence of anticompetitive power," Plaintiffs claim *Terry v. Tyson Farms, Inc.*, 604 F.3d 272 (6th Cir. 2010) supports their position because *Terry* only addressed "unfair discriminatory practices of undue preference" and not "deceptive practices." Opposition, 15. Plaintiffs misread *Terry*, which held "an anticompetitive effect is necessary for an actionable claim under subsections (a) and (b)." 604 F.3d at 279. It did not address exclusively "unfair practices," nor did it make any distinctions among the specific language used in §192(a). Rather, the court discussed §192(a) as a whole, stating, "in order to succeed on a claim under §§ 192(a) and (b) of the PSA, a plaintiff must show an adverse effect on competition." There is no equivocation in the Court's analysis.

*Terry* is consistent with other courts' interpretations of §192. For example, in *Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1230 (10th Cir. 2007), also cited by Plaintiffs, the court held "[w]e

[1] As discussed in Tyson's Motion, Plaintiffs' counsel proposed removal of the anticompetitive effect requirement as a change to the PSA and it was rejected. *See* Def. Tyson's Memo. of L. in Support of Its Mot. for Sum. J ("Tyson MSJ"), ECF 211, 3 FN2.

therefore join the those (sic) circuits requiring a plaintiff who challenges a practice under § 202(a) [(7 U.S.C. §192(a))] to show that the practice injures or is likely to injure competition." Similarly, in *London v. Fieldale Farms Corp.*, 410 F.3d 1295, 1307 (11th Cir. 2005), the court held:

> In deciding the question whether Section 202(a) [(7 U.S.C. §192(a))] of the PSA requires a showing of anti-competitive effect, we are guided by the PSA's antitrust ancestry, case law, and policy considerations in holding that in order to prevail under the PSA, a plaintiff must show that the defendant's 'unfair, unjustly discriminatory, or deceptive practices' either had an adverse economic impact or were likely to produce an adverse economic impact.

There simply is no doubt what the law is today: an injury to competition is required under §192(a) and (b).[2] Plaintiffs have provided no authority suggesting otherwise. It makes no difference whether Plaintiffs' §192 PSA claim alleges those violations be for "unfair," "discriminatory," or "deceptive" practices, the result is the same—a plaintiff must show an adverse effect on competition. Plaintiffs do not, and summary judgment must be granted against them.

## II. Plaintiffs Have Not and Cannot Show An Anticompetitive Effect for Any of Their §192 Claims.

In its Motion, Tyson established Plaintiffs were required to prove an anticompetitive effect and were unable to do so on the record. As part of their response, Plaintiffs admit the record lacks evidence of an effect on competition, but argue instead the record is sufficient to meet their own less-stringent version of an anticompetitive effect. Plaintiffs are wrong. First, courts around the country have explicitly rejected Plaintiffs' argument attempting to rewrite and lower the anticompetitive effect requirement. Second, the uncontroverted evidence establishes Plaintiffs cannot prove any type of adverse effect on competition.

[2] Plaintiffs also cite a number of cases from the 1970s and 1980s which they claim upheld PSA violations where there was no evidence of anticompetitive effect; but those cases did not actually address the issue of whether an anticompetitive effect is required and were decided well before *Terry* and other more recent precedent that makes clear an anticompetitive effect is a required showing under §192(a) and (b) of the PSA. Opposition, 16. That is clearly not the law under *Terry*.

### A. Plaintiffs' Less-Stringent Interpretation of an Anticompetitive Effect Has Been Specifically Rejected by Numerous Courts.

Even though Plaintiffs' only expert made no showing of any injury to competition, Plaintiffs argue they can still prove an anticompetitive effect with only two allegations: (1) "the defendant poultry dealer possessed anticompetitive power," and (2) that defendant "used that power to harm the plaintiff." *Id.* at 7. Sixth Circuit precedent holds these showings are not enough.

In *Terry*, the Sixth Circuit addressed what constituted an anticompetitive effect. There, the court dismissed a grower's §192(a) and (b) claims, expressly stating that an action which harms only the grower, but carries no correlating effect on overall competition in the industry, does not constitute an anticompetitive effect:

> In the present case, the district court properly determined that although Terry asserts a number of wrongful acts by Tyson, his complaint does not allege that Tyson's actions had an anticompetitive effect: "Plaintiff focuses solely on how Defendant's action harmed him as an individual grower. **He makes no allegations regarding the effect of Defendant's actions on the pricing of poultry or on overall competition in the poultry industry."** Accordingly, the district court did not err in granting Tyson's motion to dismiss Terry's PSA claim.

604 F.3d at 279 (emphasis added). Plaintiffs ignore this language, and in direct contravention argue, "Tyson is wholly incorrect that Plaintiffs must demonstrate Tyson's use of its anticompetitive power altered the company's ability to compete with others in the 'industry.'" Opposition, 7. That is clearly not the law under *Terry*.

The other cases Plaintiffs rely on also support summary judgment. For example, in *In re Pilgrim's Pride Corp.*, 448 B.R. 896, 903 (Bankr. N.D. Tex. 2011), the Bankruptcy Court recognized three ways in which a chicken grower might prove an "anticompetitive effect": (1) by "showing that [defendant's] conduct gave them an advantage over their competitors," (2) by showing the growers themselves suffered anticompetitive effects, (e.g. "[g]rowers [were] paid the same under [company's] pricing system during periods of reduced production as they [were]

during periods of average and above average production, allowing company to reduce production" while "reap[ing] the benefits of higher prices on the wholesale market") or (3) by showing "that [defendant's] actions adversely impacted consumers." (Internal quotations omitted). Critically, in all three methods, the grower must show the effect of adverse activity on *competition*, even when the growers bear the brunt of the harm.

Also supporting summary judgment is Plaintiffs' citation, *Been v. O.K. Indus., Inc.*, No. CIV-02-285-RAW, 2008 WL 11389388, at *2 (E.D. Ok. July 3, 2008). In *Been*, chicken growers brought §192(a) and (b) claims against their integrator, claiming the integrator was a monopsonist. *Been*, 495 F.3d at 1231. On appeal, in determining what constituted an "injury to competition" in a monopsony context, the Tenth Circuit set out a step-by-step process under the PSA. First, the court noted that "a monopsony can threaten competition." *Id.* at 1232. But, the court did not establish a rule that monopsony status always injures competition, as Plaintiffs urge. Rather, the court held the primary threat of monopsony status was a company's ability "to injure the end-users" by "manipulating prices to suppliers." *Id.* Based on that threat, the court held:

> Hence, to establish that the practices of a monopsonist have injured or are likely to injure competition, a plaintiff does not have to be a competitor of the buyer or demonstrate that the buyer has improperly excluded other competitors. Instead, the plaintiff must show that the monopsonist's practices have caused or are likely to cause the anticompetitive effect associated with monopsonies, **namely the arbitrary manipulation of market prices by unilaterally depressing seller prices on the input market with the effect (or likely effect) of increasing prices on the output market.**

*Id.* (emphasis added).

Plaintiffs argue they do not need to present any of this evidence to meet their own interpretation of an anticompetitive effect—no price impact, no impact on industry competition, and no market effect. The bottom line is, Plaintiffs ask this Court to create a new anticompetitive

effect threshold, whose adoption would impermissibly rewrite the PSA and effectively create the rule they failed to pass as a regulation—the elimination of an anticompetitive effect requirement.

**B. There is No Evidence in the Record of an Anticompetitive Effect.**

It is implicit in Plaintiffs' attempt to have the Court rewrite the anticompetitive effect requirement under §192(a) and (b) that they failed to make such a showing in their Opposition. And in fact, the uncontroverted facts establish Plaintiffs have not made any such showing.

Plaintiffs offered a single expert. Def's SOF 56. It is undisputed that Dr. Stiegert did not review the production levels on the output side of the Robards Complex. Def's SOF 68. It is undisputed that Dr. Stiegert did not look at the production data or contracts of any other vertical integrator to see if the Robards Complex was affecting or affected by that production data. Def's SOF 67. It is undisputed Dr. Stiegert did not review or opine on the pricing of poultry in the market, nor the price of the Robards Complex's product on the output market. Def's SOF 68-70. In short, Dr. Stiegert offered no evidence at all of an anticompetitive effect. Def's SOF 66-72.

To avoid this failure, Plaintiffs argue "economic logic" and "economic theory" establish that any harm the growers suffered must eventually result in some harm to competition. This argument reads out all requirement of an anticompetitive effect and has been rejected by multiple courts, including the cases on which Plaintiffs rely. In *In re Pilgrim's Pride,* the court rejected the "anecdotal evidence" that Pilgrim's Pride's monopsony status and plant closings would "automatically . . . force up the price of chicken." 448 B.R. at 904; *see also Sanders v. Koch Foods, Inc.*, No. 3:19-CV-721-DPJ-FKB, 2020 WL 3621322, at *6 (S.D. Miss. July 2, 2020) (rejecting as "conclusory" an argument that intentionally driving black growers from the business would automatically effect competition). But speculation is all Plaintiffs have here, as Dr. Stiegert simply did not opine on harm to competition. Accordingly, Plaintiffs' PSA claim fails.

## III. Regardless of the Anticompetitive Threshold, the Uncontroverted Evidence Shows Tyson Did Not Engage in Any Unfair, Unjustly Discriminatory, or Deceptive Practices under Section 192(a).

Tyson has established an anticompetitive effect is necessary to bring a §192 claim. Plaintiffs have not made that showing and that alone mandates summary judgment. But additionally, Plaintiffs' PSA claim fails on the factual record. Plaintiffs have presented no evidence of any "unfair, unjustly discriminatory, or deceptive practice." Plaintiffs' admissions to Tyson's statement of uncontroverted facts, including the reports and testimony of Drs. Elam and Lacy, establish there is no factual support in the record for any violation of the PSA.[3]

### A. There is No Evidence of "Unfair" Practices in the Record.

Plaintiffs' claim Tyson "wielded its anticompetitive power in how it constructed its payment tournaments." Opposition, 11. Specifically, they argue Tyson acted unfairly by "forc[ing] growers to face one another in tournaments even though it provides them flocks with different sex and breed makeups, which impacts outputs and relative placement." *Id.* Plaintiffs have no authority to support that it is "unfair" for Tyson to place growers with somewhat different inputs in the same tournament. There is no case, no statute, no regulation, no administrative decision, and no poultry scientist that Plaintiffs have pointed to in support of this assertion.

In fact, the exact opposite is true. The Department of Agriculture specifically rejected a claim that under the PSA, failing to provide the exact same inputs in a tournament violates §192. *See* Tyson MSJ, Ex. 1, U.S. Dept. of Ag., Before the Sec'y of Ag., Decision and Order, Docket

[3] Plaintiffs brought their PSA claim under three subsections: §192(a), (b), and (g). Plaintiffs do not offer any evidence of violations under §192(b) ("undue or unreasonable preference or advantage," nor under §192(g) ("Conspire, combine, agree, or arrange with any other person to do . . .any act made unlawful by subdivisions (a), (b), (c), (d), or (e)"). As a result, the only remaining consideration is whether Plaintiffs provide sufficient evidence of a violation of §192(a). As established below, they have not.

No. 12-0123. The Department held it was not a violation of the PSA for an integrator (Tyson, in fact) to provide different breeds of chicks within in the same tournament. The Department further noted Tyson's contract grants it exclusive authority to decide on inputs: "Tyson's contracts with its growers authorize[d] Tyson to provide their growers with any 'type' of bird breed." The contract provision in that case is exactly the same as exists here. *See* Def's SOF 38, 40-41.

Likewise, there is nothing inherently unfair or deceptive about the tournament system itself, which by its very nature, settles growers on a weekly basis through a contract based tournament system and compares their relative performance to each other over a given period. As noted in *M & M Poultry, Inc. v. Pilgrim's Pride Corp.*, 281 F. Supp. 3d 610, 621 (N.D.W. Va. 2017), "The tournament system is not novel or deceptive. This system has been used in the poultry industry for over forty years, and is still the standard system in the poultry industry."

In addition, the uncontroverted expert testimony establishes Tyson conducted its tournament system fairly. Dr. Michael Lacy explained, "It is biologically impossible to produce perfectly identical chicks for every flock," (SOF 89), and "there is no material difference between the breeds that the Robards Complex uses among its growers from a health, viability, feed efficiency, and target weight standpoint" (SOF 90). Dr. Elam studied all the Plaintiffs' data from 2010 to 2018 and determined that, breed, service technicians, feed, age of the laying hen, days-out, and broiler density were evenly distributed among all growers so that no grower's performance was statistically advantaged on account of his or her distribution. Def's SOF 77-82.

Plaintiffs do not controvert this evidence and do not offer any expertise on the matters at all. Dr. Stiegert simply did not look at the distribution of inputs, nor calculate any damages flowing from an unequal distribution. SOF 57, 61-64. He was provided the same data Dr. Elam utilized, but chose not to analyze it. Def's SOF 74; *see, e.g.*, TYSON_01955207-01956659 (Grower Pay

Recaps). He admitted he was not retained to study any difference in inputs or how that might affect performance, and gave no such opinions, stating he was "not here to offer an opinion on that." *Id.*

**B. There is No Evidence of "Deceptive" Practices in the Record.**

Plaintiffs' alleged factual support for "deceptive practices" under the PSA is even weaker. Plaintiffs claim Tyson engaged in deceptive practices because it "led Plaintiffs to believe that their inputs would be fair." Opposition, 19. For support, Plaintiffs point to only one factual assertion: a statement by Kenny Bartley, in which he testified that he only talks to growers about what is written in their contracts. *Id.* at 16. Plaintiffs claim that, by only discussing their contract terms, Tyson deceptively omitted any discussion of how unfair the tournament system really is. Opposition, 16-17. Plaintiffs' reliance on this one statement fails for a number of reasons.

First, nothing is deceptive about discussing contract terms. Plaintiffs' claim Tyson discussed the contract terms, and then abided by them. There is no deception in that. Second, Plaintiffs offer no evidence Mr. Bartley promised identical inputs for each tournament. In fact, the uncontroverted evidence shows the contracts gave Tyson the right to determine "the amount, type, frequency, and time of delivery to and pick-up from Producer of chickens, feed, and medication." SOF 38, 40. Third, Plaintiffs do not challenge that the tournament system has been in place for years and through all their renewal contracts. Def's SOF 108, 149, 325. In the words of the *M & M Poultry* court, "The tournament system is not novel or deceptive." 281 F. Supp. 3d at 621. Fourth, Plaintiffs also do not dispute each Plaintiff received a similar distribution of each input and that no grower was in any way disadvantaged over time based on input distribution. Def's SOF 74, 76-83. So, even if Plaintiffs were led "to believe that their inputs would be fair," the evidence shows those representations were true.

Finally, Plaintiffs severely limited their breach claims and abandoned their fraud claim. Having made these concessions, Plaintiffs are now in the awkward position of having to argue Tyson's day-to-day operation of its tournament system in accordance with its contracts violates the PSA. Plaintiffs essentially ask this Court to be the first in the country to hold a standard tournament system is inherently "unfair" and "deceptive." There is no support for such a holding. Rather, the opposite is true. *See, e.g.*, *M & M Poultry*, 281 F. Supp. 3d at 621; Tyson MSJ, Ex. 1.

**C. Plaintiffs Fail to Present Any Evidence that a Given Plaintiff Individually Received "Unfair" or "Deceptive" Treatment.**

Plaintiffs chose to bring their individual claims in a consolidated action, but that does not relieve them of their individual burdens to prove their claim or defeat a motion for summary judgment. *See, e.g.*, *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 412 (6th Cir. 1998) (consolidation "does not merge the suits into a single cause, or change the rights of the parties, or make those who are parties in one suit parties in another"). Accordingly, each Plaintiff must still prove he or she was treated unfairly or deceptively by Tyson.

Plaintiffs offer no evidence any particular Plaintiff received an unfair distribution of inputs. Similarly, no Plaintiff alleges Mr. Bartley misled him. In fact, only two Plaintiffs signed their first contracts between 2009 and 2013, the years Kenny Bartley was Live Production Manager. Def's SOF 168 (Mr. Crabtree), 184 (Mr. Hong). Every other Plaintiff signed contracts before Mr. Bartley's time and so he could not have deceived them. Def's SOF 108, 133, 149, 203, 220, 228, 255, 270, 289, 292, 325, 326. Even as to Mr. Crabtree and Mr. Hong, neither testified to any conversations with Mr. Bartley about contract terms. Def's SOF, 171-174, 190. And, Mr. Crabtree testified Mr. Bartley never lied to him. Def's SOF 180. In sum, Plaintiffs broad-brush attempt to establish a factual dispute on unfairness or deception is inapplicable to Plaintiffs themselves. A generic accusation is not enough to avoid summary judgment against each individual Plaintiff.

**IV. Summary Judgment is Appropriate on Plaintiffs' Breach of Contract Claims Because they are Duplicative of Their PSA Claim, and, Plaintiffs Admit to No Evidence of Breach of Contract, Nor Breach of Contract Damages.**

In its Motion for Summary Judgment, Tyson established Plaintiffs waived all damages except those offered by Dr. Stiegert, and as a result, had no damages to support their breach of contract claim. *See* Tyson MSJ, 12-15; Def's SOF 95-104. Plaintiffs now contend Tyson breached their contracts by violating the PSA, and correspondingly, point to Dr. Stiegert's PSA damages as the damages for their breach of contract claim. Opposition, 20.

Plaintiffs' contract claim first fails because Tyson did not violate the PSA. But putting that aside, Plaintiffs' claim fails because the record now completely contradicts Plaintiffs' damages argument. Dr. Stiegert very clearly set forth three categories of damages in support of Plaintiffs' PSA claim: (1) pay suppression, (2) days-out, and (3) condemnation. Def's SOF 57, 72. All three categories of damages are specifically addressed in the Broiler Contracts, which explicitly detail the methodology used to calculate pay under each category. *See* Def's SOF 45 (Base Pay), 52 (days-out/flock placement), and 43 (condemnation). Given this, at deposition Defendant asked Dr. Stiegert if he believed the damages resulted from a breach of the contract, or if he simply disagreed with the contract terms. It is uncontroverted that Dr. Stiegert testified he did not know of any contract violations, that the Robards Complex's condemnation practices "all looked fine," and that "[t]he contracts look like they're being -- I didn't see anything that -- that raised alarm bells for me." Def's SOF 59-60. Dr. Stiegert offered no opinions that Tyson breached any of the actual contract terms governing his three damages elements.

The record demonstrates the inconsistent position Plaintiffs now maintain. They claim the damages for their breach of contract count come in three categories, which their expert admitted

did not result from a breach of the contract. Plaintiffs cannot argue around that inconsistency and it is fatal to their breach of contract claim.

**V. Plaintiffs' Breach of the Implied Covenant of Good Faith and Fair Dealing is Not an Independent Cause of Action and Similarly Has No Damages.**

Plaintiffs' Count IV, for the breach of the implied covenant of good faith and fair dealing ("GFFD claim") fails for three reasons: (1) lack of damages, (2) not an independent cause of action, and (3) the undisputed evidence shows Tyson abided by its contract.

First, to support their GFFD claim, Plaintiffs again point to Dr. Stiegert for their damages. Opposition, 24. Dr. Stiegert did not offer any damages from an alleged breach of the Broiler Contract. Def's SOF 57-60, 72. That lack of damages is fatal. Second, as stated in Tyson's Motion, Plaintiffs plead breach as an independent cause of action, which also must result in its dismissal. *N. Atl. Operating Co., Inc. v. ZZSS, LLC*, No. 3:17-CV-00214-CRS, 2018 WL 1411266, at *3 (W.D. Ky. Mar. 21, 2018). And third, a GFFD claim cannot be predicated upon actions abiding by the contract. *Farmers Bank & Tr. Co. of Georgetown, Kentucky v. Willmott Hardwoods, Inc.*, 171 S.W.3d 4, 11 (Ky. 2005). Plaintiffs' claim does so here and must be rejected.

**VI. Plaintiffs Have No Damages to Support their Theory of Recover Under Sections §192(a) and (b).**

In its Motion and statements of fact, Tyson established Plaintiffs waived all damages in this case except those provided by Dr. Stiegert. *See* Tyson MSJ, 12-15; Def's SOF 57-60, 72, 95-104. Plaintiffs admitted this, conceding these statements of fact and that all damages flow through Dr. Stiegert. Opposition 21, 24. But this now leaves a complete disconnect between Tyson's alleged wrongful acts as theorized in Plaintiffs' Opposition and the damages Plaintiffs claim.

Plaintiffs claim Tyson violated §192(a) and (b) by engaging in "unfair" and "deceptive" practices—namely, providing Plaintiffs with different inputs and failing to tell them anything

about their contracts beyond the contract's plain terms, which as discussed above, include Tyson's right to select inputs. But Dr. Stiegert's damage categories very clearly do not attribute damages for disparate inputs or deceptive statements.

Dr. Stiegert offered damages in three categories: (1) suppressed wages attendant to all monopsonistic integrators (not specifically the Robards Complex), (2) days-out damages, for more days-out than represented, and (3) condemnation damages for contractually overvaluing the weight of a condemned broiler. Def's SOF 57, 72. Noticeably absent is any damage for receiving lower quality inputs, different inputs, different treatment between tournament growers, or anything of that nature. Nor do his damages relate in any way to Mr. Bartley's discussions about contract terms. In fact, the uncontroverted evidence shows that Dr. Stiegert conceded he had "not quantified any damages based on any sort of variability of inputs to the growers." SOF 64.

Plaintiffs' claim that, but for the Robards Complex operating as a monopsony, it would have treated Plaintiffs contractually differently in how it calculates base pay, condemnation, and out-time. Def's SOF 57, 72, 104. And Dr. Steigert offered alternative calculations under those three functions alone. *Id.* Plaintiffs concede these are the only damages sought in this case and are solely dependent on the conclusion that those three functions would have differed in a competitive market. Yet now, in Opposition, they claim the "breach" of the PSA was different inputs and deception, yet fail to provide any evidence to the Court tying inputs or deception to any of the three damages categories. In short, Plaintiffs simply have not provided any damages flowing from their input/deception theory such that they can state a claim.

Tyson met its burden at summary judgment by establishing its tournament system did not violate the PSA and that Plaintiffs offered no damages for a PSA violation. Tyson MSJ, 8-11. Having made this showing, the burden shifted to Plaintiffs to demonstrate a genuine issue of

material fact as to the existence of a violation and damages. *Ronald A. Chisholm, Ltd. v. Am. Cold Storage, Inc.*, No. 3:09-CV-00808-CRS, 2013 WL 2242648, at *3 (W.D. Ky. May 21, 2013). Plaintiffs cannot offer "conclusory allegations" or "speculation" as to their damages. *Register v. Tyson Foods, Inc.*, No. CIV.A. 12-0689, 2013 WL 2644580, at *2 (W.D. La. June 11, 2013). And yet, that is all the Plaintiffs have—speculation. They have no evidence in the record that they can identify for damages suffered from disparate inputs or deceptive acts. In fact, Plaintiffs concede the exact opposite: they claim damages from an entirely different theory. That gap in evidence mandates Summary Judgment for failure to show material controverted facts of damages that relate in any way to Plaintiff's stated cause of action.

## VII. Plaintiffs Abandoned Their Fraud Count.

In their Opposition, footnote 2, Plaintiffs abandoned Count V for Fraud against Tyson. As such, summary judgment must be entered on Count V for Tyson.

## VIII. Judicial Estoppel is Not Appropriate.

Plaintiffs argue the Court should invoke judicial estoppel to prevent Defendant from holding them to their burden of showing an anticompetitive effect. Opposition, 13. Neither the procedural history of this case nor the case law support the imposition of judicial estoppel.

Plaintiffs base their judicial estoppel argument on two objections Defendants made on May 9, 2016, to Requests for Production Nos. 49 and 50. On September 22, 2017, Plaintiffs filed a motion to compel these responses. In December 2017, the Court held a hearing on a variety of matters, and following the hearing, the Plaintiffs withdrew their motion to compel RFPs 49 and 50 without substantive discussion with the Court on those issues. *See* Order, ECF No. 90. That withdrawal was without prejudice so Plaintiffs could later re-file. They never did.

Now, Plaintiffs present these two RFPs as if they were their only opportunity to acquire evidence of an anticompetitive effect and Defendants stopped them. In fact, evidence of Robards' competitive status was part of discovery between the parties in multiple forms.

First, in late 2017, Defendants agreed to an ESI search term bank of phrases including "market price" and "sale price." Ex. 1. Those terms were searched under the agreed ESI protocol, but, Plaintiffs instead shifted their ESI focus to several distinct categories of information for production from the ESI search term effort, none of which included price information. Ex. 2.

Second, on May 2, 2018, Defendants produced hundreds of thousands of pages of AgriStats data. That data included specific monthly reports showing the Robards Complex's market output, product pricing, the national output and price of that product, how Robard's pricing compared to the national markets, and the percentage of the market that the Robards Complex held. See*, e.g.*, Ex. 3. Dr. Steigert's report even includes an entry under his "data considered" list pursuant to Rule 26 that he considered the Agristats data. Expert Report of Dr. Kyle Stiegert, Appx. B. Yet neither he nor Plaintiffs cite to any of that data in his report, their motion, or otherwise. To argue Defendants prevented Plaintiffs from accessing evidence of anticompetitive effects is simply false. The reality is, Plaintiffs have the relevant data in their possession but simply chose not to use it.

A court should only apply judicial estoppel when a party maintains "clearly inconsistent" positions, succeeds in convincing the court of one position and then switches, and when allowing the party to maintain these positions would be unjust. *New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001). None of this occurred here and judicial estoppel is inappropriate.

**CONCLUSION**

For the reasons outlined, this Court should grant summary judgment in Tyson's favor.

**CERTIFICATE OF SERVICE**

I hereby certify that July 31, 2020, I served the foregoing document via electronic mail to the following counsel of record:

John C. Whitfield
WHITFIELD BRYSON LLP
19 North Main Street
Madisonville, KY 42431
Telephone: 270-821-0656
Facsimile: 270-825-1163
Email: John@whitfieldbryson.com

Caroline Ramsey Taylor
WHITFIELD BRYSON LLP
518 Monroe Street
Nashville, TN 37208
Telephone: 615-921-6500
Facsimile: 615-921-6501
Email: Caroline@whitfieldbryson.com

BUTLER FARM & RANCH LAW GROUP, PLLC
J. Dudley Butler
499A Breakwater Drive
Benton, MS 39039
jdb@farmandranchlaw.com

PUBLIC JUSTICE, P.C.
David S. Muraskin
1825 K. St. N.W., Suite 200
Washington, D.C. 20006
dmuraskin@publicjustice.net

*/s/ Mark C. Tatum*
ATTORNEY FOR DEFENDANTS
SHOOK, HARDY & BACON LLP
Mark C. Tatum, Mo. Bar No. 50082*
2555 Grand Blvd.
Kansas City, MO 64108
Telephone: 816.474.6550
Facsimile: 816.421.5547